# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1828, AT WORCESTER.

PRESENT ·

Hon. ISAAC PARKER, Chief Justice,
Hon. SAMUEL PUTNAM, }
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON, }

## JOHN JENNISON et al. versus HUTCHINS HAPGOOD.

This Court, as a court of chancery, has no authority to re-settle an executor's administration account, alleged to have been erroneously or fraudulently settled in a court of probate, but a party aggrieved by such settlement must appeal, or if the proceedings may be treated as a nullity on account of fraud, the executor must be cited to account in the probate court.

If an executor, being directed by the testator to redeem land devised subject to a mortgage, and having assets sufficient for that purpose, violates his duty by selling the right of redemption to an innocent purchaser, the devisee cannot maintain a bill in equity against the executor, there being an adequate remedy at law for pecuniary damages.

But if the sale in such case is made, through an agent, to the executor himself, this is a trust arising under a will and in the settlement of an estate, and the devisee has a remedy by a bill in equity, by virtue of St. 1817, c. 87.

Whether any lapse of time short of twenty years would be sufficient to exclude proof that the executor had, before the foreclosure, assets sufficient to redeem the land, quære.

If land sold by a trustee is purchased by him on his private account, the purchase is not merely void ; but if the cestui que trust dissents in a reasonable time, the trustee will be considered as holding for his benefit.

THIS was a bill in equity brought in July, 1820, by the administrators, widow and children of John Grout, against the executor of Jonathan Grout. The bill alleged that the testator, at the time of his decease, was seised of a large real and personal estate situated in Massachusetts and Vermont, including a valuable farm in Petersham, which was known by the name of his homestead farm, and which he had mortgaged to one Abigail Hale ; that he devised this farm to his son John Grout above named in fee, directing that if his son Jonathan Grout junior should be unable to redeem the mortgage, according to certain bonds, wherein he had engaged to indemnify the testator against the mortgage, one half of the incumbrance should be paid out of the testator's other estate, and after each of the testator's five daughters should have received 1000 dollars, the residue of the incumbrance should be paid out of the testator's other estate ; that the testator died on the 9th of September, 1807, and the defendant soon after caused the will to be proved in Massachusetts and Vermont, and accepted the trust of executor, and by virtue thereof possessed himself of effects and estate of the testator, besides the farm above mentioned, more than sufficient to pay the debts, legacies and expenses of administration ; that John Grout died on the 12th of September, 1807 ; that Jonathan Grout junior had never paid, and ever since the decease of the testator had been unable to pay, the money due on the mortgage, and that the plaintiffs had requested the defendant to pay the same out of the estate of the testator, in order that the farm might be redeemed and disposed of for the benefit of all persons interested in the estate of John Grout ; but that the defendant had unnecessarily sold the farm by virtue of his authority as executor, the testator's estate, exclusive of the farm, being sufficient to redeem the mortgage, besides paying the testator's debts and legacies, and the expenses of administration, and had himself purchased and redeemed the farm for a sum much less than its real value ; that the defendant, in April, 1809, redeemed and took possession of the farm, and had ever since received the rents and profits, appropriating them to his own use ; and that the plaintiffs had requested him to convey the farm to the administrators of John Grout, and to account to

them for the rents and profits, but that he had refused so to do. The prayer of the bill was, that if the defendant would not admit that assets came to his hands sufficient to redeem the mortgage, after paying the testator's debts, &c. he should set forth an inventory and account of the testator's goods and lands, debts, &c. and that he should be decreed to convey the farm, and account for and pay over the rents and profits, to the administrators of John Grout.

The defendant, in his answer, objected, that if the complaint were true, the plaintiffs had an ample remedy in the courts of probate and common law ; that many of the matters alleged against him referred to times so long past and to circumstances so multifarious, and to business so complicated in its character, that it was impossible from memory to state the particulars required, and it was not reasonable or fit in equity to hold him so to do ; that every thing which he had ever done in reference to the subjects contained in the bill, was done by him as executor, except as hereafter mentioned, and was properly cognizable before the Probate Court ; and protesting that he had already settled all matters in relation to the estate of his testator, before the Probate Court for this county, after due notice to all persons interested, and that that court had, on the 7th of December, 1819, passed a final decree respecting the same, from which no appeal had ever been claimed, and that therefore this bill ought not to be sustained ; nevertheless, if this Court should overrule his objections to their jurisdiction, he denied that he was accountable for the homestead farm, or any disposition made of it, otherwise than by the sale of the right in equity to redeem the same from the mortgage, and for which he had already accounted in his administration accounts ; he further stated, that on the 3d of March, 1807, the right in equity to redeem was taken and sold by virtue of an execution against the testator to N. Hale, and that the defendant, on the 21st of April, 1809, in his capacity of executor, purchased and redeemed the same right in equity of and from John Jennison, one of the plaintiffs, to whom it had been assigned by Hale ; that the defendant afterwards, intending to benefit the testator's estate, sold the right in equity, pursuant to a license of this Court, by public auction, to one Brooks, and faithfully accounted for

*(margin)* Jennison
v.
Hapgood.

Jennison
*v.*
Hapgood.

the proceeds in his accounts of administration ; that on the 1st of March, 1809, he and Brooks, with their own money, and on their own account, procured to themselves jointly from Abigail Hale an assignment of the mortgage ; that at that time, the defendant, as executor, had not, nor could by any means have obtained from the testator's estate, money sufficient to redeem the mortgage, or to pay one half of the amount, if any other person could or would have paid the other half on account of the estate of John Grout ; that after the assignment to Brooks and himself of the mortgage, and after the sale to Brooks of the right in equity to redeem, to wit, on the 1st of January, 1810, he purchased of Brooks, for a valuable consideration of his own money, all the right, title and interest of Brooks, in the farm, and took from him a conveyance thereof accordingly ; that to the best of his judgment and belief, the amount of the mortgage, together with the sum for which the right in equity was sold, was the full value of the farm at the time of the conveyance to him by Brooks ; that Brooks was not re quested by the defendant to purchase the right in equity, and that the conveyance thereof by Brooks to the defendant was not made in pursuance of any agreement or understanding between them entered into previously to the sale to Brooks ; that he never took the rents and profits, nor had possession of the farm, in his capacity of executor, nor in any other manner than as a purchaser in his own right for a valuable consideration paid out of his own money ; that he took possession of the farm in his own right, under and by force of the original deed of mortgage and for breach of the condition, and also by force of the deed of conveyance of the right in equity, and that the right to redeem was foreclosed long before he could obtain from the testator's estate any money to apply to the redemption, and that there never had come to his hands from the testator's estate, after paying debts, legacies, &c. a sufficient sum to pay the whole amount of the mortgage, and the administrators and heirs of John Grout had never offered to pay one half thereof, so that upon the payment of one half by the defendant the farm might have been redeemed.

The plaintiffs filed an amended bill, in which they charged, among other things, that the defendant rendered false and

fraudulent accounts in the probate office, which were allowed without notice to the plaintiffs ; and that he made sales of the testator's lands, and procured certain persons to bid, to whom a great proportion of the lands was struck off for and on account of the defendant at prices much less than their true value, and that he had again sold many parcels at much greater prices than he paid, and that he refused to account to the plaintiffs for the gains thereby accruing

The defendant, in his answer to the amended bill, denied that his accounts of administration were false or fraudulent, or settled without notice to all persons interested. He further stated, in answer to a charge in the amended bill, that after the assignment of the mortgage to himself and Brooks, they prosecuted an action of ejectment for the recovery of possession of the farm against Prudence Grout, the widow and one of the administrators of John Grout, and recovered judgment, and that the defendant, in the name of himself and Brooks, sued out a writ of seisin on such judgment, and by force thereof evicted Prudence Grout on the 22d of June, 1811, and thereupon took possession of the farm to his own use. He also stated, that certain parcels of land were bid off by one P. White, and that the defendant conveyed the same to him by deed of November 2, 1808, and charged himself with the proceeds of the sale in his accounts of administration ; that to induce White to take a conveyance, he represented to him the value of the lands, and promised him that if he should be dissatisfied with the purchase, or should become unable to pay for the lands, the defendant would take them off his hands by a purchase at the same price ; that in July, 1809, White having become dissatisfied and being unable to pay, the defendant, as he had accounted in the Probate Court for the proceeds, was obliged for his own security, to take from White a conveyance to his own use, and that he still held the lands, with the exception of a few lots, which he had sold. He further stated, that sales of other lands were made by him in June, 1814, and that the proceeds had been accounted for in the probate settlement of his accounts ; that certain lots were bid off by M. White and S. Gates, at the request of the defendant, and with an agreement that the defendant, after con-

veying the same to them in his capacity as executor, would take a conveyance thereof from them to himself, and would account for the price in his settlement of the estate, without their paying any money to him ; and he alleged that the several parcels of land before mentioned could not have been sold for a greater amount than had been obtained therefor and accounted for as above stated.

*Mills* and *Lincoln,* for the defendant, contended that the bill could not be sustained, for that here was no trust within the meaning of *St.* 1817, *c.* 87 ; that the statute does not relate to trusts reposed in executors by the ordinary duties of their office ; that the plaintiffs had an ample and complete remedy at law upon the probate bond ; and that all the matters in the bill had been brought before the proper and legal tribunal, the Court of Probate, and had been there adjudicated upon, and this Court would not, as a court of chancery, take cognizance of a case of which they had jurisdiction as the Supreme Court of Probate, in consequence of the default of the plaintiffs in not appealing from the decrees of the judge of probate *M'Vickar* v. *Wolcott,* 4 Johns. R. 533.

*L. Bigelow,* for the plaintiffs.

The opinion of the Court was delivered as drawn up by

PARKER C. J. The general question which has been argued is, if this Court, in virtue of the statute of 1817, *c.* 87, has jurisdiction of the matters charged in the plaintiff's bill. The plaintiffs are the administrators of John Grout deceased ; the defendant is the executor of Jonathan Grout deceased.

The plaintiffs allege in effect, that Jonathan Grout devised his homestead farm, which was under mortgage, to John Grout, upon certain conditions, *viz.* that the defendant, as executor, should, after paying the other debts, pay one half of the mortgage for the benefit of John Grout, and then 1000 dollars to each of the testator's five daughters, and then the other half of the mortgage, to the intent that John Grout should have a fee simple in the homestead farm ; that the defendant had sufficient assets, but did not appropriate them according to the trust, but in violation of his duty sold the homestead to pay debts, which he ought to have paid by other estate of the testator, and that he purchased the homestead, in the name of an

agent, for himself, at a price much less than the value. The plaintiffs then pray that the defendant may be compelled to render an inventory and an account, and reconvey to the ad ministrators of John Grout, for the use of his widow, heirs and creditors.

As to all the accounts and proceedings in the Probate Court, where upon the face of them that court has jurisdiction, this Court, as a court of chancery, has no jurisdiction, but will hold all that has been properly done there as conclusive. If any one was injured by any order or decree of that court, the remedy was by appeal to the Supreme Court of Probate. If, as the plaintiffs allege in the amended bill, the proceedings were void for fraud, and if the plaintiffs may treat them as a nullity, that would not give this Court, as a court of chancery, original jurisdiction. If the proceedings are merely void, the defendant must be cited to account in the Probate Court. If errors have happened, they are to be corrected in that forum, if corrected at all. We cannot, in this incidental way, re-settle an account here, which has been once settled there, any more than we could revise the question, whether there was a will, or whether it had been duly proved. The Court will proceed upon these principles in ascertaining the facts, if the cause shall come to a hearing upon the merits, to wit, what assets came to the defendant's hands, what debts he has paid ; and so of every matter properly done or cognizable in the Probate Court, it is to be considered true and conclusive.[1]

In regard to the homestead farm, if the plaintiffs should prove that the defendant had assets sufficient to have redeemed the whole, after paying the debts and legacies, but violated his duty by selling it to a stranger, who was innocent, such evidence would not give this Court jurisdiction, because there would be a complete remedy at law for pecuniary damages, and such only, in the case now supposed, could be recovered. The title would pass to the innocent vendee, and the plaintiffs would be entitled to recover damages for this, as for any other maleadministration of the estate. But if the plaintiffs should prove that the sale was made to an agent for the defendant's

---

[1] See *Paine* v. *Stone,* 10 Pick. 76; *Field* v. *Hitchcock,* 14 Pick. 405, 407.

Jennison
v.
Hapgood.

account, and that the defendant in that way bought the estate in violation of his trust, when he had funds, after payment of the debts and legacies, to have redeemed, before the equity was foreclosed, we are of opinion, that those facts would bring the plaintiffs' case within the statute. There would be an implied trust, arising under a will in the settlement of an estate, and there would not be so complete a remedy at law. A recovery of damages would not perhaps be so good a satisfaction as a recovery of the estate. The defendant still holds the estate, and may be compelled to convey it to the plaintiffs. Upon this point of the case it is to be observed, that the law will not permit one to buy an estate, which he was intrusted to sell, in such manner as to make any profit or benefit to himself.[1] It is not strictly true that the trustee may not purchase ; in other words, the purchase is not merely void. If the *cestui que trust* should acquiesce in the sale, he would be bound ; but if he dissents in a reasonable time, the trustee will be considered as holding for the benefit of the *cestui que trust*. A court of chancery would have power to do justice in such a case, either by compelling a reconveyance, or the payment of the excess as ascertained by a second sale.[2]

If the bill should be sustained upon this ground, the proceedings in the Probate Court, which upon the face of them appear rightly done, will be taken to be true, as has been before stated. And the objection of long acquiescence will be entitled to much consideration, and perhaps will be a sufficient answer. Upon this point the Court would observe, that there is no precise rule as to what length of time, or what other fact or circumstance shall be considered sufficient proof of acquiescence. Lord *Thurlow* (2 Bro. C. C. 426,) seemed to think three years a long acquiescence. " When," he inquires, " would such a transaction as this end, if not in three years."

---

[1] " The *cestui que trust* is not bound to prove, nor is the court bound to decide, that the trustee has made a bargain advantageous to himself." " In all cases where a purchase has been made by a trustee, on his own account, of the estate of his *cestui que trust*, although sold at public auction, it is at the option of the *cestui que trust*, to set aside the sale, whether *bonâ fide* made or not." 1 Story on Eq. 318. See 1 Story on Eq. 316 to 319; *Litchfield* v *Cudworth*, 15 Pick. 31.

[2] See *Hayward* v. *Ellis*, 13 Pick. 276; *Litchfield* v. *Cudworth*, 15 Pick. 31.

In that case (*Fox* v. *M'Creth*) the defendant was held to account for the difference between the purchase and resale ; but it was a case strongly marked with gross fraud.  In *Whichcote* v. *Lawrence*, 3 Ves. 752, the court thought that an acquiescence for six years by a large number of creditors ought not to bar.  But in the case now under consideration, the plaintiffs did not bring their suit until nine years after the defendant enforced his purchase by a recovery against one of the plaintiffs, without any objection on her part ; and the purchase was made eleven years before the plaintiff's bill was brought.  We are strongly inclined to think that such an acquiescence under such circumstances would be a sufficient answer.

And it is to be remarked, that no such bill in equity could then have been maintained.  We are acting upon a statute, which has been passed many years after the transaction complained of, and considering the great caution and solicitude manifested by the legislature upon this subject, it seems to us that it would be carrying the remedy in equity to a great extent, if we were to open the transaction as to this point, *viz.* that the defendant himself became the purchaser, after so long an acquiescence.  This however will be a matter for further consideration if the cause shall proceed upon a hearing of the merits.[1]

There is another part of the amended bill, as to which it seems we have jurisdiction, that is, as to the other parcels of land sold.  The proceeds of the sale were carried into the account, and allowed by the judge of probate.  But the plaintiffs now allege, that the defendant ought to account for a larger sum, because the defendant bought in the estates, and has made a profit of them.  The objection to this point, *viz.* that the defendant is to be considered as trustee, buying for his own use, and so accountable for the excess of value, has already been noticed, and would apply to this part of the case as well as to the homestead farm.  But as to the other point, *viz.* that the defendant had in fact assets to have paid off the incumbrances when he bought in the mortgage, or perhaps at any time be-

---

[1] See *Jennison* v. *Hapgood*, 10 Pick. 77, 111 ; *Houghton* v. *Hapgood*, 13 Pick. 158.

fore the foreclosure, the lapse of time ought not to prevent the proof; for if he had such assets, it seems that the conveyance to him was *ipso facto* in trust for the plaintiffs, and he could not acquire a title against them without their consent, in such way. So there ought perhaps to be no bar to the proof of such fact, short of twenty years, the statute bar for entries &c. on real estate.

And further, if the bill should be heard, it will be a question, whether the plaintiffs, who represent John Grout, should not have offered to pay the one half of the mortgage, which he was to pay according to the will, in case of a deficiency of assets to pay more than the debts and legacies and one half of the mortgage. In such a case the defendant would not have been obliged to pay the whole, and he could not redeem by paying half.

If the defendant should be now compelled to convey to the plaintiffs, it can only be on their paying him one half, and the defendants taking the other half out of the estate ; unless there are sufficient assets first to pay one half of the mortgage, then 1000 dollars to each of the five daughters, and then enough remaining to pay the other half of the mortgage.

Note. At September term 1828 the plaintiffs became non-suit. [1]

---

[1] See *Jennison* v. *Hapgood*, 10 Pick. 77 ; *Houghton* v. *Hapgood*, 13 Pick. 154 ; *Grout* v. *Hapgood*, 13 Pick. 159 ; *Jennison* v. *Hapgood*, 14 Pick. 345, *Paine* v. *Hapgood*, 13 Pick. 152.