SARAH L. MYERS et al., Respondents, *v.* THOMAS BOLTON et al., Appellants, Impleaded with Others.

1. TENANTS IN COMMON — COMPENSATION FOR MANAGEMENT OF ESTATE — ACQUIESCENCE. Mere silence on the part of certain tenants in common as to the management of the real estate by their co-tenants, being also executors without power over the realty except to sell it, for some six years from the probate of the will of their common testatrix, where the executors, who were lessees of most of the property, were business men, while the other tenants in common were their sisters and were not shown to have known all the material facts, and nearly all the land was being subjected to condemnation proceedings, does not constitute, as matter of law, an acquiescence entitling the executors to an allowance of compensation for services in collecting rents and managing the real estate, when sued by their co-tenants for an accounting.

2. LIABILITY FOR INTEREST UPON RECEIPTS FROM ESTATE. Where, in an action between tenants in common for an accounting as to the management of the estate by the defendants, it appears that the defendants have mingled their collections of rent with their own funds, have used them in their own business and have failed to render any account, they are liable for interest on the annual balances of collections over disbursements, to the date of the referee's report, but not for compound interest.

*Myers* v. *Bolton*, 89 Hun, 342, modified.

(Argued October 6, 1898; decided December 13, 1898.)

50

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered December 2, 1895, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alex. Thain* for appellants. If the action is to be deemed an equitable one, the appellants invoke the principle of the maxim that he who asks equity should do equity. (Potter's Willard's Eq. 92, 107; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 N. Y. 27; Perry on Trusts, §§ 910, 917, 918; 3 Wait's Act. & Def. 149; *Stevens* v. *Melcher*, 152 N. Y. 551; *Phœnix* v. *Phœnix*, 28 Hun, 629; *Matter of Moffat*, 24 Hun, 325.) It was error to charge appellants with interest upon annual balances. (*Benedict* v. *Sliter*, 82 Hun, 190, 198; *Smith* v. *Velie*, 60 N. Y. 106, 111; *Seymour* v. *S. F. C. Assn.*, 4 App. Div. 359, 367; *W. S. Bank* v. *Town of Solon*, 136 N. Y. 465, 481; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 N. Y. 331, 337; *Price* v. *Holman*, 135 N. Y. 124; *Matter of Barnes*, 140 N. Y. 468; *Button* v. *Kinnetz*, 88 Hun, 35.) The appellants should have been credited with payments made by them in restoring the machinery and building in excess of moneys realized upon the insurance policies. (*Stevens* v. *Melcher*, 152 N. Y. 551.) The appellants are not estopped by reason of statements contained in their books or in the account presented in the Surrogate's Court by the executors. (Bigelow on Estoppel, 638.) It was error to charge the defendants Thomas Bolton and Henry B. Bolton and William H. Birchall jointly for the several collections made by Thomas Bolton and Henry B. Bolton. (*Woolever* v. *Knapp*, 18 Barb. 265; *Dresser* v. *Dresser*, 40 Barb. 300; *Wilcox* v. *Wilcox*, 48 Barb. 327; *Joslyn* v. *Joslyn*, 9 Hun, 388; *Roseboom* v. *Roseboom*, 15 Hun, 309.) The defendant William H. Birchall should not have been held for the rent of the house occupied by him. (*Muldowney* v. *M. & E. R. R. Co.*, 42 Hun, 449; 6 N. Y. S. R. 80.) All the

causes of action as to which testimony was given were legal and not equitable in their nature. The defense upon that ground should, therefore, have been sustained. (*Town of Mentz* v. *Cook*, 108 N. Y. 504; *Grandin* v. *Le Roy*, 2 Paige, 509; *Le Roy* v. *Platt*, 4 Paige, 77; *Mills* v. *Mills*, 115 N. Y. 80, 85; Potter's Willard's Eq. 139; *Dudley* v. *Congregation T. O. St. Francis*, 19 N. Y. Supp. 605, 608; *Arnold* v. *Angell*, 62 N. Y. 508; *Heywood* v. *City of Buffalo*, 14 N. Y. 534, 540; Code Civ. Pro. § 1666; 1 R. S. 749, § 9.)

*T. W. Foster* for respondents. The referee properly disallowed defendants' claims. (*Mumford* v. *Brown*, 6 Cow. 475.) The Bronx Company should be charged with all the rents actually collected by it, and all the rent reserved by the lease with interest from the time the rents were collected or should have been collected. The company mingled the rents with its own moneys and used them in its business. (*Bonn* v. *Steiger*, 2 N. Y. S. R. 90; *Stacy* v. *Graham*, 14 N. Y. 492; *Greenly* v. *Hopkins*, 10 Wend. 97; *Hover* v. *Heath*, 3 Hun, 283; *N. Y., L. E. & W. R. R. Co.* v. *Carhart*, 1 N. Y. S. R. 435; *Adams* v. *Fort Plain Bank*, 36 N. Y. 261; *Sanders* v. *L. S. & M. S. R. Co.*, 94 N. Y. 641; *Eldred* v. *Eames*, 48 Hun, 253.) The Bronx Company erroneously claims to be allowed out of the rents the cost of repairing one of the mills, a part of the leased property that was damaged by fire, amounting to $5,501.06. (*Howard* v. *Doolittle*, 3 Duer, 464; *Hallett* v. *Wylie*, 3 Johns. 44; *Graves* v. *Berdan*, 26 N. Y. 498; *Taylor* v. *Baldwin*, 10 Barb. 626; *Scott* v. *Guernsey*, 48 N. Y. 106; *Mumford* v. *Brown*, 6 Cow. 475; 31 Hun, 522; *Coakley* v. *Mahar*, 36 Hun, 158.) The Bronx Company erroneously claims that there can be no recovery in this action of the rents reserved under its lease for the reason that those rents have not been collected. (*Rosenberg* v. *Block*, 22 J. & S. 537; *Risdon* v. *De La Rua*, 19 J. & S. 63; 98 N. Y. 653.) The defendants erroneously claim that the Bronx Company is not liable to pay the rent reserved by the lease subsequent to the passage of the New Parks Act of June 14, 1884, claiming

that under that act the city was vested with the title of the property from the passage of the act. (*Matter Dept. of Parks,* 6 N. Y. Supp. 750 ; *Matter of Munson,* 29 Hun, 325 ; *Matter of Military Parade Ground,* 60 N. Y. 320 ; *Matter Comrs. of Washington Park,* 56 N. Y. 144 ; *Hamersley* v. *Mayor, etc.,* 56 N. Y. 533 ; 1 R. S. [6th ed.] 661, § 103 ; 2 Hill, 342.) The complaint sets forth the lease to the Bronx Company, the collection of the rents by that company, the common ownership of the property by the parties, asks for an account of all rents collected and for the recovery of the rents reserved by that lease, and demands judgment for the recovery of all these moneys or what might remain after making proper credits. The action was properly brought. (*Tuers* v. *Tuers,* 16 Abb. N. C. 464 ; *Lane* v. *Wheelright,* 23 N. Y. Supp. 576 ; Code Civ. Pro. § 483 ; *Devlin* v. *Mayor, etc.,* 23 N. Y. Supp. 888 ; *Mills* v. *Mills,* 115 N. Y. 80 ; *Stacy* v. *Graham,* 14 N. Y. 492 ; *Bonn* v. *Steiger,* 2 N. Y. S. R. 90.) Defendants cannot have judgment for causes of action not set up in defense or counterclaim. (*Wright* v. *Delafield,* 25 N. Y. 266.)

VANN, J. On the 29th of September, 1882, Ann Bolton, the mother of all the parties except William H. Birchall, who was her adopted son, died seized of some valuable real estate situated on the Bronx river at a place known as Bronxdale. She left a will dated April 6th, 1880, which was duly admitted to probate on the 20th of November, 1882, whereby she devised all of her real property, except a single house and lot, to the parties to this action and Emily B. Norris, a daughter who died in 1887 intestate and without descendants. She also gave power to her executors to sell any or all of her real estate either at public or private sale, but gave them no other authority with reference thereto. The most valuable part of her real estate had been leased to her sons, Henry B. and Thomas Bolton, and her adopted son, William H. Birchall, who were copartners under the name of the Bronx Company, for five years from March 1, 1880, with the privilege of five years more, which was duly exercised, at a rent reserved of $4,500 a

year. Said lessees occupied all of this leased property until
1891, although the most valuable part of it was taken by the
city of New York for Bronx park under chapter 522 of the
Laws of 1884, the report of the commissioners of estimate
having been confirmed on the 9th of July, 1889. This action
was brought to compel the defendants composing said com-
pany to account for rents received for the use and benefit of
the plaintiffs. (Code Civ. Pro. § 1666; 1 R. S. 749, § 9.)

Many questions have been argued before us, but we are
satisfied with the disposition made thereof and the reasons
given therefor by the General Term so far as those questions
received expression of consideration in the opinion of that
learned court. We will briefly examine two questions, not
discussed below, that are pressed upon our attention with
great earnestness by the counsel for the appellants.

The defendants who compose the Bronx Company are the
only appellants, and they insist that the referee erred in not
allowing them, or the two who assumed to control the real
estate, as executors, compensation for their services in collect-
ing rents and managing the real estate. It is admitted that,
so far as they rendered services for the benefit of their co-ten-
ants in common in the condemnation proceedings, they have
received compensation already, and that the two executors
have received compensation for all the services rendered by
them, as such, with reference to the personal estate. The
appellants were neither employed nor authorized to collect
rents or manage the realty, but they base their claims to com-
pensation therefor upon the theory that their co-tenants acqui-
esced in their action, and, hence, impliedly promised to pay
what their services were reasonably worth. They raised
the question by a request to find duly presented to the referee,
under the practice in force at the time of the trial, in these
words: " The plaintiffs acquiesced in the management by the
said defendants under the title of the ' estate of Ann Bolton '
of the properties left by the deceased." The referee refused
to so find and the appellants excepted. Unless the evidence
was such that it was an error of law for the referee not to find

as requested, we cannot reverse the judgment upon the question now under consideration. The case contains no certificate that it includes all the evidence given on the trial, and all that appears on the subject is in substance as follows: Prior to the death of Ann Bolton the appellants had managed her estate and transacted her business for her. After her death the executors, assuming that they had power to do so under the will, continued to manage the real estate by renting it, collecting rents and the like. All the moneys collected went into the business of the Bronx Company, and no account was kept except in the books of that company.

No affirmative act of acquiescence on the part of the plaintiffs was shown. From 1882 until 1889, when this action was begun, the appellants collected, received and retained all the rents, but paid therefrom taxes, insurance, interest on mortgages and a small amount of the principal. When called upon to account in Surrogate's Court in 1889, it was discovered that they had no power over the realty as executors, except to sell it under the power of sale, and thereupon this action was commenced. Whatever they did in the management of the real estate was done without any actual authority from the plaintiffs, and we find no evidence of implied authority, except that the plaintiffs did not take charge of their interests respectively in the real estate, or object to the conduct of the defendants with reference thereto. All the rents collected by the appellants, amounting to nearly $46,000, have been retained by them, except such portions as they paid out for the purposes already mentioned. They paid no part of it to the plaintiffs, and while it does not appear expressly that a demand was made upon them for it, the evidence is very suggestive that demands were made but not complied with. The appellants pleaded no counterclaim for compensation in their answer, nor did they move to amend the pleadings in that regard upon the trial. All the money collected they mingled with their own, and have had the use of it in their business except as aforesaid. While they owe the balance individually because they received it and used it, they now claim the right

to counterclaim for services which two of them assumed to render as executors, but which they had no right to render in any capacity. They made no charge in their books and claimed no compensation therefor, so far as appears, until the trial of this action. Over two-thirds of the rents received and retained were owing by the three appellants as copartners, under said lease from Ann Bolton. In the absence of an agreement, one tenant in common is not entitled to compensation for collecting the rents belonging to himself and his co-tenants. An executor who intermeddles with the real estate and assumes the management thereof without authority, has no right to compensation even for valuable services rendered as such. Like an executor *de son tort* he is subject to personal liability without any compensating advantage. There is, therefore, no basis of fact or law to sustain the contention of the appellants that they, or that the two of them, who were executors, have a right to compensation for services connected with the real estate in question. To permit executors to charge for services rendered without authority would be a dangerous rule, especially in a case like the one before us, where the executors were business men, and the persons against whom they seek to make the charge were their own sisters, who do not appear to have sanctioned the management of the real estate by them or to have accepted any benefit therefrom. There was no acquiescence on the part of the plaintiffs, unless it is to be inferred from silence, and it does not appear whether they said anything by way of demand or protest or not. They are not estopped, for they made no representation and took no action upon which an estoppel can be predicated. It has been held that acquiescence " is no more than an instance of the law of estoppel by words or conduct." (*De Bussche* v. *Alt*, L. R. [8 Ch. Div.] 286, 314.) So in *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 159, 187) acquiescence was said to be " the doctrine of equitable estoppel, which applies to members of corporate or associated bodies, as well as to persons acting in a natural capacity." While submission to an existing state of things for a longer or

shorter period, with full knowledge thereof, is evidence of acquiescence, still, as was said in *Jenison* v. *Hapgood* (24 Mass. 1, 7), "There is no precise rule as to what length of time or what other fact or circumstance shall be considered sufficient proof of acquiescence." From November 20th, 1882, when the will was proved, until a short time prior to April 24th, 1889, when this action was commenced, the plaintiffs do not appear to have shown open discontent, but mere negligence in submitting to a wrong even for that length of time was not conclusive under the circumstances. What should they have done? They might have brought an action to partition the premises, but they were not bound to, or an action for an accounting, which they finally brought. Their omission to take any action, as the referee might have properly concluded, may have been owing to the fact that during the most of the period of silence nearly all the land was subject to proceedings in condemnation. As early as the year 1882 it was known by the parties that the city of New York contemplated taking the most of the property for a park, although the act authorizing condemnation was not passed until 1884. It does not appear that the plaintiffs knew all the material facts. While they may be fairly presumed to have known of the will, for it could not have been proved without notice to them, still it is not a presumption of law that they knew what the executors were doing with reference to the realty. The evidence of knowledge, aside from presumption, is confined to the declaration of a single interested witness in the form of a conclusion that they understood what was going on. Even if they did, we do not think that mere silence, under all the evidence, is sufficient to make it an error of law for the referee to refuse to find that they acquiesced to such an extent as to warrant the inference of an implied promise to pay. Acquiescence was a question of fact, and while he might have found for the defendants upon this question, he was not bound to so find.

The appellants also claim that injustice was done them by the allowance of compound interest, and this, we think, is well

founded. The referee, in stating the account, charged them with the amount collected and credited them with the amount paid out each year. As the annual receipts always exceeded the disbursements, he deducted the latter from the former and charged them with interest on the balance from the last day of the year in which it accrued until August 1, 1894, although why that date was selected does not appear, for the report was dated March 28, 1895. He directed judgment in favor of the plaintiffs for their proportion of the aggregate of these annual balances, with interest thereon from August 1, 1894. Compound interest was thus allowed, and the judgment is erroneous to that extent. The defendants were liable for interest on the annual balances to the date of the report because they had mingled the collections with their own funds; had used them in their own business, and had failed to render any account. They thus received a benefit from the use of the money of others which they ought to have promptly accounted for and paid over. As they were not actual trustees, we do not think they were liable for compound interest, for even trustees are not held liable to this extent except under special circumstances. This error, however, does not necessarily require a reversal of the judgment, as it may be corrected by making the proper deduction, the amount of which can be computed with absolute certainty.

The judgment should be reversed and a new trial granted, with costs to abide the event, unless the respondents stipulate to deduct the amount of compound interest included in the judgment, and in that event the judgment should be modified accordingly, and, as thus modified, affirmed, without costs in this court to either party. The order, if not agreed upon, may be settled before the judge who prepared the opinion of the court.

GRAY, HAIGHT and MARTIN, JJ., concur; O'BRIEN and BARTLETT, JJ., vote for further modification for the reason that the appellants were also entitled to commissions as trustees by consent or acquiescence; PARKER, Ch. J., not sitting.

Judgment reversed unless, etc.