In the Matter of the Estate of LOUIS NAPOLEON LEVY, Deceased.

Surrogate's Court, New York County, December 1, 1938.

*Cardozo & Nathan* [*Michael H. Cardozo, Jr.*, and *Louis J. Felstiner* of counsel], for the respondents, executors.

DELEHANTY, S. On April 17, 1869, William Cooper, ancestor of one of the petitioners in this proceeding and ancestor of another person whose estate is also a petitioner here, owned certain lands located in the then village of Westchester. This realty was situated to the west of Mill pond on Westchester creek and included in its area certain salt meadow land. William Cooper died intestate in 1889 leaving as his heirs his children William C., Grant L., Eugenia, Jennie and Wilhelmina Cooper. These five became tenants in common of the land subject to a mortgage and to the dower right of the widow. Shortly after William Cooper's death a partition action was brought by his son William C. Cooper. All parties in interest were joined. The interlocutory judgment in this action named a referee and authorized him to have made a survey of the property. The judgment directed that the premises be sold either as a whole or in lots determined by the authorized survey. In time the survey was completed and a map made called the Serrell map. This map referred to the north line of the premises differently from the north line of the plot described in an 1820 deed whereby the lands were conveyed to Cooper's predecessor in title. The line in this 1820 deed corresponded with the northerly boundary

of Cooper's property as shown on a map of 1869. The land lying between these respective north boundaries was a parcel of salt meadow land and is hereafter sometimes referred to as damage parcel No. 7. The identity of this salt meadow as part of the lands of William Cooper was litigated sharply but the exhibits suffice to establish the ultimate fact to be as stated. Why the parcel was not included within the Cooper lands mapped and sold by the referee in the partition action does not appear. Whatever the explanation the fact is that William Cooper owned more land than was sold during the partition and the excess later constituted the damage parcel No. 7 from which were derived the funds here in controversy.

Contiguous to damage parcel No. 7 were certain lots which were conveyed by the referee in the partition action to Samuel G. Derrickson by deed dated August 19, 1891. On June 30, 1892, these lots were conveyed by Samuel S. Derrickson and his wife to Jefferson M. Levy and L. Napoleon Levy. The latter's executors are respondents here. It is clear that L. Napoleon Levy was aware that the realty which he purchased was strictly delimited to the lots set out on the Serrell map and, therefore, did not include the salt meadow land to the north thereof. On December 24, 1892, he secured the execution by the Coopers of the following sealed instrument: " We, the undersigned, the widow and heirs at law of William Cooper, deceased, late of the town of Westchester, do hereby agree to execute and deliver to L. Napoleon Levy a quit-claim deed of whatever interest we may have or be entitled to in certain salt meadow land situated in the village of Westchester and adjoining on the North and East the land which was sold in the partition suit between the heirs of said William Cooper, deceased, by Jas. B. Lockwood, Referee. Upon the delivery of the deed or deeds we are to receive from the said Levy the sum of two hundred and fifty dollars which is to be divided between us share and share alike."

This instrument implied a recognition both by Levy and the Coopers that the referee's sales in the northerly region of the Cooper property did not cover the salt meadow. It was, of course, not a concession by Levy that the adjacent salt meadow land belonged to the Coopers but the latter fact is independently established by the maps in evidence. Until April 22, 1907, no action seems to have been taken on the 1892 instrument. On that date William C. Cooper conveyed to deceased his rights in the salt meadow land. A similar conveyance to the same grantee was made on May 8, 1907, by deed executed by Grant L. and Eugenia Cooper. Jennie Cooper Ferris and Wilhelmina Cooper Boyd (two of the five cotenants) made no conveyance to deceased. The posi-

tion of their successors in interest (petitioners here) is that after the deeds of 1907 were made, L. Napoleon Levy, Jennie Ferris and Wilhelmina Boyd owned the salt meadow as tenants in common with interests of three-fifths, one-fifth and one-fifth respectively.

The salt meadow land or damage parcel No. 7 was acquired for the city of New York by the transit commission on August 20, 1923. An award of $4,500 was made for the parcel on July 24, 1925. This sum was deposited to the account of its unknown owners. Prior to these condemnation proceedings L. Napoleon Levy had died. For a considerable period his executors had no knowledge of the estate interest in the condemned land. When they learned of it the executors petitioned the Supreme Court and on May 2, 1928, got an order directing the city chamberlain to release the net fund to the estate as the sole party entitled thereto. *The executors succeeded in getting the award by proving their title to the condemned land by way of the 1907 grants to the deceased made by three of William Cooper's heirs.* As part of their case they introduced the so-called Lovell map which plainly shows that damage parcel No. 7 stood outside the limits of the Cooper lands disposed of by the referee in the partition sale but was within the boundaries of the lands originally owned by William Cooper and within the terms of the 1907 conveyances to L. Napoleon Levy. In other words, part of the present petitioners' factual proof duplicates the facts on which the executors relied in order to get the award. Yet in the present proceeding the executors have sought to throw doubt on these same facts.

In 1935 the present petitioners first learned of this recovery by the estate. They moved the Supreme Court to vacate the order pursuant to which the award had been paid to the executors of deceased. This motion was denied. COHN, J., in an opinion dated July 2, 1935, found as a fact that no fraud had been committed in the procurement of the order in question. He also said: " As it is claimed a portion of the award was paid to persons not entitled thereto, the remedy available to the petitioner and to the other claimant is an action at law for money had and received against the recipient of the award." This determination was affirmed without opinion (249 App. Div. 723). Thereafter petitioners came into this court and moved to compel the executors to account. This motion was denied on the ground that the proper remedy to be pursued was a proceeding under section 206-a of the Surrogate's Court Act. Accordingly they instituted the present proceeding. They here seek a direction to the executors-respondents, requiring the latter to turn over to petitioners two-fifths of the net award.

The respondent-executors resist on four grounds. They contend that the petitioners have failed to prove as a fact what the boundaries were of the salt meadow lands owned by their predecessor in title, William Cooper. And further on this point respondents assert that petitioners have in any case not succeeded in proving the identity of damage parcel No. 7 with any salt meadow lands established to have been owned by the said Cooper. As a second defense they assert that the instrument of 1892, the text of which has been quoted above, is a " contract of sale " whereby the predecessors of petitioners " agreed to convey title to the premises to L. Napoleon Levy, thus vesting in him full equitable title to the premises and to the award." In a third defense they allege that the proper remedy of petitioners is an action initiated pursuant to section 983 of the provisions of the old Greater New York Charter for money had and received. Finally, the Statute of Limitations is set up generally as a bar to any recovery here.

The first of these four defenses is shown by the proof to be unsound. Petitioners have proved fully that damage parcel No. 7 is the same land which was formerly owned by William Cooper, that it remained unsold during the 1891 partition action and that it belonged to petitioners as tenants in common with L. Napoleon Levy until all participants in the fee were ousted by the city's condemnation proceeding.

The holding that petitioners were tenants in common with L. Napoleon Levy implies the holding that the second of the above-enumerated defenses is insufficient in law. This conclusion does not require for support a finding that the 1892 instrument was *nudum pactum*. It is true that the instrument recites no consideration. Still, the argument that it is a unilateral engagement entered upon without consideration and, therefore, not binding is unsound. The instrument was sealed. And a sealed instrument is conclusively presumed to import consideration. As the Court of Appeals has said (*Cochran* v. *Taylor*, 273 N. Y. 172, 179): " It is agreed upon substantially universal authority that a statement of consideration in a sealed instrument is unnecessary. (*Thomason* v. *Bescher*, 176 N. C. 622; 2 A. L. R. note, p. 631.) It is also frequently stated by the courts that a sealed instrument carries with it a presumption that it is given for a valid consideration without the necessity of a recital of the consideration therein and that the party signing and sealing is estopped to assert lack of consideration. [Citing numerous cases.] "■

Although the 1892 engagement is binding on its signatories it is not a " contract of sale " as respondents assert it to be. It is an irrevocable option which could have been accepted by its promisee at any time throughout its duration. In dealing with a similar instrument it was said in *McMillan* v. *Ames* (33 Minn. 257, 259; 22 N. W. 612) — a case cited with approval in *Cochran* v. *Taylor* (*supra*) — that a promise of this character, binding because under seal, " is not a mere offer, but a valid promise to convey the land upon the condition of payment. All that remained was performance by plaintiff (the promisee) within the time specified to entitle him to a fulfillment of the covenant to convey." In the present case no time limit was specified. In that situation a reasonable time is implied by law to be the intention of the parties. (Restatement of the Law of Contracts, § 40.) Meanwhile and until acceptance before this reasonable time expired the promisee had no interest in the subject-matter of the option.

The unilateral option contract under which L. Napoleon Levy was the promisee is not the same as the bilateral contract which would have arisen if the promisee had indicated his determination to accept. " A binding option is a contract but it is also an offer which when accepted will create another contract. Defendants agree that, if they accept the offer, they will do certain things. But they have not accepted the offer and the entire option fails with such refusal." (*Heller* v. *Pope*, 250 N. Y. 132, 135, 136.) This language exactly fits the present case provided the signatories to the 1892 option were several rather than joint promisors. For in the present instance so far as petitioners are concerned the deceased never took up the 1892 option, which, therefore, so far as they were concerned, never ripened into a bilateral contract directly touching the land. A claim is made by respondents that William Cooper's heirs and his widow made a *joint* commitment by the 1892 option and that in consequence the 1907 deeds made to Mr. Levy by three of the heirs effectively conveyed the interests of all the promisors. This contention is rejected. On its face the 1892 option is plainly operative in severalty only. The heirs were tenants in common only and not joint tenants. Deceased's procurement in 1907 of two separate deeds rather than one was a practical construction of the option and shows that his understanding was that it bound the promisors in severalty and not jointly. For the reasons stated the second defense of the executors is insufficient.

It is next to be determined whether the petitioners here are obliged to seek relief by an action at law pursuant to the terms of section 983 of the charter (now section B15–28.0, subd. e, of title

B of chapter 15 of the Administrative Code of the City of New York) which in part provides: "Where an award shall be paid to a person not entitled thereto, the person to whom it ought to have been paid may sue for and recover the same, with lawful interest and costs of suit, as so much money had and received to his use, by the person to whom the same shall have been so paid." The parties have argued this phase of the proceeding with reference to the cited statute although the controlling statutory provision (in exactly the same text as the charter text) is to be found in the special act of the Legislature to provide for rapid transit railways (Laws of 1891, chap. 4, as amd. by Laws of 1915, chap. 604, § 51) since the condemnation proceeding eventuating in the award was conducted pursuant to this act. The court holds that the action at law *authorized* by the statute in question is not the *sole* remedy open to petitioners. Looking to the matter solely from a procedural standpoint petitioners are entitled to seek relief by the means here chosen, namely, by way of a proceeding under section 206-a of the Surrogate's Court Act since they are claiming from the executors of the estate "specific money * * * alleged to be in the possession or under the control" of the latter. This point is substantially conceded by the executors-respondents whose real argument in this connection is that, granting petitioners can prop-. erly resort to this forum and seek relief by a special proceeding here, *the legal theory* on which the relief is sought must continue to be exactly the same as that available to petitioners had they resorted to an "action," namely, the proceeding must sound in "money had and received." The executors argue that if the proceeding here is actually one for money had and received petitioners are barred from relief since respondents had had the award money for more than six years before the present proceeding was begun. It is this contention which presents the most serious question as to petitioners' right to the relief which they seek. It must be said at once that if the *sole* substantive right of petitioners is to recover on a theory of money had and received they must fail in the present proceeding. A mere shift from a court of general jurisdiction to this court or the circumstance that the respondents here are fiduciaries is of no consequence. The question, therefore, becomes this: Are the petitioners here entitled to sue respondents on some valid theory of the latter's liability, other than the theory of money had and received, and thus have available to them a more favorable Statute of Limitations than that applicable to simple contracts?

Chapter 4 of the Laws of 1891, as amended by chapter 604 of the Laws of 1915 (§ 51, and under earlier amendatory laws, § 54),

seems never to have been construed by the courts. However, the text of section 983 of the old city charter (formerly in substance § 1002, originally § 1441) has been before the courts on a number of occasions, notably in *Matter of City of New York* (209 N. Y. 127) and *Matter of City of New York (Queens Boulevard)* (254 App. Div. 685).

In the former case an award for certain lands acquired by the city was paid into the city treasury for account of unknown owners. Later one Delia A. Finnegan petitioned successfully for payment of the fund to her. Thereafter one of the true owners petitioned the Appellate Division to direct Delia A. Finnegan to repay to the chamberlain the money she had received from him. Over the opposition of both the city and Delia A. Finnegan this relief was granted. The Court of Appeals reversed, saying (p. 132):

" The provisions of the Greater New York Charter (L. 1901, ch. 466) (§ 1441) relative to awards to unknown owners in proceedings to condemn lands for such a public use as that contemplated in the present case, point out the remedy which is available to a party in the position of the respondent, upon ascertaining that an award has been paid to another. This is an action for money had and received against the recipient of the award. The section cited provides that ' in all and each and every case or cases, where any such sum or sums or compensation, so to be reported by said commissioners in favor of any person or persons, party or parties whatsoever, whether named or not named in said report, shall be paid to any person or persons, party or parties whatsoever, when the same shall of right belong to and ought to have been paid to some other person or persons, party or parties, it shall be lawful for the person or persons, party or parties to whom the said sum or sums ought to have been paid, to sue for and recover the same, with lawful interest and costs of suit, as so much money had and received to his, her or their use, by the person or persons, party or parties, respectively, to whom the same shall have been so paid.'

" I think that the proper course for the respondent was to bring the action thus expressly permitted by statute, as was held in a similar case by the Appellate Division in the first department. (*Matter of Corporation Counsel N. Y. City*, 42 App. Div. 198.) "

In *Matter of City of New York (Queens Boulevard)* (*supra*) the record on appeal shows that petitioners were executors and trustees of a deceased person who in his lifetime had given land to the city on a trust to use the same for a public disposal plant. This property was appropriated by way of condemnation for street purposes. The award was paid to the city as designated owner. The petitioners moved for an order directing payment to themselves

of the award moneys. The motion was denied. In affirming the result in the lower court the Second Department, though acknowledging that petitioners became the owners of the realty due to reversion of title when the trust use was abandoned, said: " nevertheless, the petitioners' sole remedy is in an action at law to recover on the theory of money had and received pursuant to the provisions of the Greater New York Charter (§ 983) since the award here sought to be recovered was made to a designated owner in the final decree, entered on the 18th day of December, 1917, and paid to that designated owner, the City of New York. (*Matter of City of New York*, 209 N. Y. 127.)."

In both of the cited cases the award moneys were paid to recipients who were strangers to the title. In each instance the award was made literally " to a person not entitled thereto." It is the contention of petitioners here that in the present case the award moneys were not paid to a person not entitled thereto but on the contrary were paid in full to a person entitled only to a share corresponding to the recipient's original rights in the land as tenant in common with petitioners. Because the money substituted for the land it is asserted the petitioners and respondents continued to enjoy their separate rights therein as tenants in common. The relevant Statute of Limitations confronting these petitioners, they say, is, therefore, not section 48 of the Civil Practice Act but section 34 which bars recovery only after the lapse of fifteen years.

In condemnation proceedings the money award stands for the land and is distributable in proportions determined by the original right which parties had in respect of the land. In *Matter of City of New York (Cropsey Ave.)* (268 N. Y. 183) respondent and appellant were husband and wife. The husband was owner of realty acquired by the city. His wife had an inchoate right of dower in the realty. A portion of the award moneys was paid to the husband. Another sum said to be the value of the dower was retained by the chamberlain to the husband's credit. This sum the husband endeavored to get while the wife opposed the motion and asked for an order directing its retention and investment by the chamberlain. The position of the wife was sustained. The court said (p. 186):

" The damages awarded take the place of the land and the fund thus created becomes *a substitute for the real property taken.* (*Utter* v. *Richmond*, 112 N. Y. 610, 613.) Although an inchoate right of dower does not amount to an estate or title or interest in the land but constitutes a contingent claim as an institution of the law (*Witthaus* v. *Schack*, 105 N. Y. 332, 336), nevertheless the wife has an interest which attaches to the land as soon as there is a concurrence of dower and seizin and this valuable, subsisting, separate

and distinct interest is entitled to protection. (*Clifford* v. *Kampfe*, 147 N. Y. 383, 385, 386.)   *   *   *

" As between the holder of an inchoate right of dower and the sovereign or its delegate exercising the power of eminent domain, the wife is divested of her interest when payment is made to the owner of the fee (*Moore* v. *Mayor, etc., of New York*, 8 N. Y. 110), *but, except as to the sovereign or its delegate, her right will be preserved.* (*Simar* v. *Canaday*, 53 N. Y. 298, 304; *MacKenna* v. *Fidelity Trust Co.*, 184 N. Y. 411, 415; *Matter of Trustees of New York & Brooklyn Bridge*, 75 Hun, 558; *Wheeler, Green & Whitney* v. *Kirtland*, 27 N. J. Eq. 534.) " (Italics supplied.)

This language in principle governs the present case. As between the delegate of the sovereign which here exercised its power of eminent domain and the petitioners the latter were divested of their interest in the fee; but, except as to the sovereign, these interests were not lost. " The conversion of the land into money was only made for a special purpose; and that having been accomplished, the surplus, by a fiction of equity, is reconverted into land." (*Dunning* v. *Ocean National Bank*, 61 N. Y. 497, 503.) The incidents of a tenancy in common attached to the award moneys here as they had formerly attached to the land itself. Consequently, since one tenant in common could not validly plead the six-year Statute of Limitations in an action designed to establish the rights of his cotenant, such a defense is equally untenable as respects the substitute for the land, namely, the award money. As among themselves the tenants in common lose *none* of their rights when the money is substituted for the land. Therefore, one cotenant does not lose his rights under the long period Statute of Limitations when another cotenant takes the position that he is exclusively entitled to the land-substitute. As was said in *Utter* v. *Richmond* (112 N. Y. 610, 613): " No doctrine could be more clearly just than that, when land is taken for public use, the damages awarded are to take the place of the land in respect to *all the rights* and interests which are dependent on and incident to it." The foregoing analysis requires the holding that petitioners here as tenants in common of the land condemned acquired an interest in the fund representing the land and are not barred by the six-year Statute of Limitations from recovery of their interest in the money. The fifteen-year Statute of Limitations is applicable. (Civ. Prac. Act, § 34; *Willis* v. *Sterling*, 224 App. Div. 647.)

There remains for consideration only the question of the right of petitioners to interest. On that question the case of *Myers* v. *Bolton* (157 N. Y. 393; reargument denied, 158 id. 665) is applicable. The case dealt with the rights of persons who became tenants

in common with the executors of a deceased as devisees of deceased. The executors managed the realty and collected the rents which they commingled with their personal funds and used for their personal benefit. The executors had been in charge of the land since November, 1882. They were sued by their cotenants in April, 1889. The case held that the cotenants were entitled to recover their proportionate share of the net rents and were entitled to simple interest on a basis of annual balances of rents throughout the entire period of the cotenancy. On the subject of interest the court said (p. 401): " The defendants were liable for interest on the annual balances to the date of the report because they had mingled the collections with their own funds; had used them in their own business, and had failed to render any account. They thus received a benefit from the use of the money of others which they ought to have promptly accounted for and paid over. As they were not actual trustees, we do not think they were liable for compound interest, for even trustees are not held liable to this extent except under special circumstances. This error, however, does not necessarily require a reversal of the judgment, as it may be corrected by making the proper deduction, the amount of which can be computed with absolute certainty."

Here the respondent-executors appropriated to the estate the whole of the fund received by them. They undertook to exclude their cotenants from any participation in the fund and now seek to continue that exclusion. In such circumstances it seems to be the rule that the rate of interest to be allowed is the legal rate. (*Sanders* v. *Lake Shore & M. S. R. Co.*, 94 N. Y. 641.) The court there said: " This interest was allowed, not by virtue of any contract to pay interest, but simply as damages because the defendant was in default in the discharge of its obligation to the plaintiff, and wrongfully withheld money due him." While there may be occasions where the allowance of interest would not follow the legal rate (Compare *Tuzzeo* v. *American Bonding Co.*, 226 N. Y. 171, 179), the courts incline to a standardization of the rule and thus to the allowance of the legal rate. (*Preston Co.* v. *Funkhouser*, 261 N. Y. 140.) The appropriation and the commingling referred to in *Myers* v. *Bolton* (*supra*) and the fact that the respondent-executors have not shown any basis for application of other than the legal rate require that such rate be applied in this case. The court accordingly holds that the principal sum payable to petitioners is to bear simple interest at the legal rate from the date the money was received by the executors of deceased.

Submit, on notice, decree accordingly.