In the Matter of DORIAN DEMILLO, an Attorney, Respondent.

First Department, April 13, 1934.

*John Neville Boyle* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Lawrence S. Lesser* of counsel [*Jacob J. Lesser*, attorney], for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law at the October, 1915, term (on November 8, 1915) of the Appellate Division of the Supreme Court, First Department.

The learned referee sustained both charges in an able and painstaking report.

Upon this record we are forced to differ from the referee in his conclusions.

By the first charge the respondent is accused of converting the money of his client. The uncontroverted facts show that one Krukovsky, desiring to take from a savings bank some $600, the property of his deceased wife, was told by the bank that no payment could be made except to an administrator, whereupon Krukovsky consulted with respondent. Respondent had Krukovsky appointed administrator with a surety bond and joint control with the surety over the fund. The undertaker duly filed a claim amounting to $422, which Krukovsky disputed, claiming he had an agreement with the undertaker that his bill should not exceed $239. Respondent agreed with the surety that if the funds could be withdrawn, respondent would see to it that the undertaker's bill would be finally disposed of before the money was turned over. A check drawn to the order of the administrator was obtained from the savings bank and was delivered by Krukovsky to respondent. The check was thereupon indorsed " Michael Krukovsky, Admr. of the Estate of Sophie Sandoufska, Dorian DeMillo, atty.," and respondent kept the money until Krukovsky paid the undertaker's bill. Krukovsky had requested the respondent to endeavor to compromise the undertaker's bill. The compromise was not effected and the attorney for the undertaker started an action so that the court might determine the amount of the bill. Certain it is that Krukovsky brought in a summons served March 7, 1927, and thereafter the office of respondent went through all the customary activities in preparing a case for trial. This action was still pending when Krukovsky compromised the bill with the undertaker and immediately thereupon obtained the balance of the money from respondent, less the amount of the respondent's fee as fixed by the court.

As we understand the claim of the petitioner, it is that respondent is accused of having obtained from the savings bank the money without the knowledge of Krukovsky and converting it to his own use, while at the same time delaying the settlement with the undertaker. In other words, as was said by the referee: " The theory of the petitioner, supported by evidence, is that Krukovsky did not know that the bank account had been collected and that the respondent told him that a suit started by the undertaker was preventing its collection and its payment over to him.

" The theory of the respondent, likewise supported by evidence, is that Krukovsky was present when the savings bank account was collected; that he voluntarily turned over the check to the respondent in order that the respondent might have cash to pay

the undertaker if a settlement should be effected; that he instructed the respondent to pay the undertaker out of the savings bank account and then pay the balance to him less the respondent's fees; that the respondent deposited the check in his bank account and then withdrew the amount thereof in cash and kept it in cash in a box in his safe until after complaint had been made to the Bar Association when it was turned over to an attorney representing Krukovsky."

The referee then goes on to say: "It will be noted that the crucial point of difference centers on the collection of the savings bank account. Krukovsky claims that he did not know that it had been collected until more than two years after it had happened. The respondent says that Krukovsky was at the savings bank when the account was collected and voluntarily turned over the check to him in order that he might retain its proceeds."

The referee says that upon this issue Krukovsky's story was corroborated by the records of his employer that he was at work at the Grand Central Terminal instead of with Kaplan collecting the savings bank account, and by Spinner (a clerk of respondent), who says in substance that Krukovsky called constantly at the respondent's office and asked whether the bank account had yet been collected. The referee says that the story of respondent is corroborated by Kaplan's testimony that Kaplan was at the bank when the account was collected, by Krukovsky's docile attendance at the office for a year and one-half ending with the introduction of a client, by the testimony of Levin that the respondent asked him to open an account in the name of an administrator, and by the testimony of Betsky and Pikus that the respondent was trying to find Krukovsky. The learned referee says that he places more weight upon the records of the New York Central Railroad Company in reference to the time card than upon Kaplan's testimony as to the presence of Krukovsky at the bank, and that the hunt of respondent for Krukovsky was so perfunctory that it may well have been stayed for the purposes of a record, and that it passes the point of coincidence for the respondent to fail to receive two letters from Ehrlich (attorney for the undertaker) and the letter from Krukovsky and for the mails also to fail to bring the notice of appearance in the undertaker's suit to Ehrlich.

The record shows, however, that the time sheet of the New York Central Railroad Company as to the time that Krukovsky left on the day when Kaplan testified that the account was withdrawn from the savings bank is the only time sheet which shows an irregularity. Furthermore, Kaplan was only employed by respondent for a very short time and has been and now is a member of the bar

in good standing, entirely independent of respondent, and has everything to lose and nothing to gain by departing from the truth. Therefore, this testimony of an attorney as to Krukovsky's presence at the savings bank with him is entitled to more weight than a time card, especially when the only irregularity of entry is on the particular afternoon in question. Furthermore, the testimony of respondent is that Krukovsky accompanied Kaplan back to the office and went in and gave the check from the savings bank to respondent. Strong corroboration of this evidence on behalf of respondent is found in the testimony of Krukovsky, complaining witness, that he gave the original of the check to respondent. While Krukovsky denied that he told the respondent to write his name on the back of the check, yet since Krukovsky himself had endeavored to obtain the money from the savings bank, and the very purpose of his appointment as administrator was to obtain this money, the testimony permits the inference that the delivery over of the check to the respondent was for the very purpose of having the same cashed so that a settlement might be made with the undertaker. Furthermore, if Krukovsky was so put out with the action of respondent, he certainly would not have brought a new client to respondent at the very end of this alleged dissatisfaction.

In addition, Krukovsky was not kept out of his money by any act of the respondent more than by his own act, since at any time Krukovsky might have settled with the undertaker and obtained from respondent the balance of the fund, as indeed Krukovsky did as soon as he had brought the matter to the attention of petitioner. Furthermore, the respondent is corroborated by the fact that after Krukovsky had given testimony before the grievance committee, and when respondent could least expect a call from him, Krukovsky, upon calling upon respondent, was shown the money, taken from the safe in his office, by respondent. The failure to receive letters by respondent is offset by a defect in the formal proof as to the mailing of the letters by Ehrlich, the attorney for the undertaker, and as to the registered letter by the fact that the post office apparently was satisfied to deliver this registered letter to some so-called agent of respondent instead of to respondent

Krukovsky is a foreign-born peasant, who altogether never received more education than a year's schooling at the most, is unable to tell his age, but thinks he is about forty years old, and of whose intelligence the referee in his report says: " Surely a lawyer has seldom had to deal with a client of lower mentality and denser ignorance." As against this we have the respondent giving up a law practice in New York city to enlist and being certified by his

immediate superior officer as: " By reason of his broad knowledge of languages he was detailed for duty as an intelligence operator in the important debarkation area based on Brest, France. After the armistice he was transferred to Paris for special duty with the intelligence officer of the American Peace Commission. And then engaged in an important function with the U. S. Secret Service at the home of President Wilson in Paris. At all times he has done credit to the trust placed in him * * * and has displayed energy and ability and has rendered service of great value, in dealing both with our people and with our allies."

For all the foregoing reasons and others shown by this record, we are brought to the conclusion that this charge has not been sustained against respondent.

By the second charge the respondent is accused of serving a client so assiduously as to have been unfair to the defendant. Respondent instituted a suit on a note for $600, upon which $575 remained unpaid. It is charged that after the complaining witness had been served, he called upon the respondent and exhibited to him certain checks aggregating $250, which he claimed showed, irrefutably, additional payments. Pursuant to the request of respondent, Schreiber, the complaining witness, delivered the checks to respondent in order that he might verify the claim of partial payment to Markowitz, the client. The complaining witness claims that respondent told him that he would not file the summons and, therefore, it would not be necessary for the complaining witness to appear or answer. Instead, however, respondent entered judgment by default against Schreiber and enjoined his bank from paying out moneys. The complaining witness thereupon called upon respondent and protested against his conduct, but under threats from respondent the complaining witness alleges that he signed under duress a document which he did not read and also gave certain postdated checks to repay the amount which he claims he had already paid and that in default of so paying commitment might issue. The complaining witness Schreiber subsequently retained an attorney, who moved to vacate the judgment entered on default and the court severed the action as between the amount admittedly due and the amount of $250, which the complaining witness claimed to have paid. It is further alleged that this action to recover the $250 has never been tried. The respondent, however, served a notice of trial for the first month available in the action involving the disputed payments. Various proceedings were had by both parties, but Markowitz left the State and, returning sick, said he was unable to go ahead with the trial. Shortly thereafter he died. Apparently each side was

preparing to try this issue when Markowitz died. Both the complaining witness and the respondent have consistently maintained their contentions on this issue of partial payment.

This whole charge is so interwoven with this issue of payment between the parties that, in the absence of a determination thereof, we cannot sustain this charge, particularly when the charge does not in any way involve the relationship of attorney and client and concerns alleged unfairness to a defendant whose animus is stirred because he believes that the respondent orally agreed he would take no further action upon the service of a summons (which is denied by respondent), but instead entered a default judgment and obtained an injunction tying up the bank account of the complaining witness.

The proceeding should be dismissed.

MERRELL, MARTIN, O'MALLEY and UNTERMYER, JJ., concur.

Proceeding dismissed.