In the Matter of IRVING V. A. HUIE et al., Constituting the Board of Water Supply of the City of New York, Relative to Acquiring Title to Real Estate for the City of New York, in the County of Delaware. STILSON A. TWEEDIE et al., Respondents; BOARD OF WATER SUPPLY OF THE CITY OF NEW YORK, Appellant.

Third Department, May 9, 1963.

438

*Leo A. Larkin*, Corporation Counsel (*Seymour B. Quel, Theodore R. Lee* and *Francis T. Murray* of counsel), for appellant.

*Francis R. Paternoster* for Stilson A. Tweedie and another, respondents.

*Paul F. Eaton* for Lynn Sutliff and another, respondents.

REYNOLDS, J. Involved here are claims for business damage and indirect real estate damage allegedly suffered by respondents as a result of construction of the Pepacton Reservoir. Respondent, Stilson A. Tweedie, has been engaged as an auctioneer and cattle dealer upon the premises involved in his claim since 1945. He was a lessee of the premises from 1945 until April, 1951 when he exercised an option to purchase the property contained in the lease. On July 13, 1956 he filed a business damage claim and on January 26, 1959 joined with his wife in filing a claim for business damage and for indirect real estate damage. As to the other claim, the Sutliffs have operated a tavern and restaurant in the affected area since 1945. In their first claim filed March 2, 1953 they requested recompense for " damages to such business, which has been directly or indirectly decreased in value by reason of the execution of plans and/or the acquisition of lands by the City of New York in the area of lands designated on filed maps by the City of New York as Delaware Sections No. 14, 15, 16 and 17." A second claim, in the same language but relating to sections 18, 19 and 20, was filed on March 20, 1957. At the trial the Sutliffs introduced evidence to reduced value of real estate used in the business. When appellant objected to the introduction of such testimony on the ground that the only claim filed was for business damage, the Sutliffs moved to amend their claim to include a claim for indirect real estate damage which amendment the Commissioners granted on August 21, 1959.

Appellant disputes the Commissioners' determination as confirmed by the court below on the grounds that both the Sutliffs' and Tweedies' claims for indirect real estate damage were barred by the applicable Statute of Limitations; that in any event the Tweedies' claim for indirect real estate damage should not have been allowed since they were not the owners of the realty at the time it allegedly decreased in value, and that the awards are excessive. The Commissioners and the Special Term have found that the Statute of Limitations on claims arising from the construction of the Pepacton Reservoir did not begin to run until August 2, 1957, the date of completion of certain highways and access roads which the Commissioners found " an integral part of the plans for the construction of the Pepacton Reservoir ". Appellant contends that as to respondents' claims the statute began to run on November 30, 1955, the date on which the last persons were removed from the reservoir area. Subdivision (b) of section K41–18.0 of the New York City Administrative Code, in pertinent part, provides that claims under section K41–44.0 must be presented to the Commissioners of Appraisal " within three years from the execution of the plan or work, *the execution of which is claimed to be the direct or indirect cause of damage.*" (Emphasis added.) It is undisputed that the physical construction of the reservoir itself, the removal of the people from the area and the destruction of farms, homes and businesses, all of which had been accomplished by November, 1955, were the basis of the claims herein and that the highway and road construction which continued until August 2, 1957 in no way caused or contributed to respondents' damages. The testimony clearly isolates all events precipitating the damages here claimed as having occurred prior to November, 1955. Under these circumstances we cannot agree with the determination of the court below and the Commissioners that the statute did not commence running until August 2, 1957. Subdivision (b) of section K41–18.0 indicates specifically that the statute begins to run from the date on which direct or indirect damage was caused, and respondents have advanced no authority which would support their contention that the completion date for the entire project, rather than the time of execution of the plan or project causing the damage involved, should be the date on which the statute commenced to run. Accordingly, we find that the Statute of Limitations began running in November, 1955 upon completion of the last portion of the project which contributed to respondents' damages (see *Wine* v. *Commonwealth*, 301 Mass. 451). The respondents urge that even if the Statute of Limitations was found to have started running in November,

1955, their original claims filed are broad enough to permit an award for the indirect real estate damage to the business properties here involved. Appellant asserts that separate claims must be filed primarily because the damages for injury to an established business are based on loss of profits while the damages to the property would be based on any decrease in the value thereof. Although admittedly the method of computing the amount of damages would differ, it would still seem evident that since the premises upon which a business is carried on may well be an important if not the predominant asset of the business, any decrease in value would be an element of the damages sustained by the business. Furthermore, although section K41–44.0 clearly envisions two types of claims, an indirect real estate claim and a business damage claim, we do not construe this to mean that separate claims must be filed where as here the owners of the business are also owners of the property involved but rather to afford relief to the owner where he does not own the business operated thereon. We do not find *Matter of Bensel* (140 App. Div. 806) relied on by appellant apposite here, nor do we find any authority which would require a different result. Reviewing the wording of the Sutliffs' claim we find it sufficiently broad to encompass all elements of damage to their business including any decrease in the value of the real property used therein. Further, while normally in situations such as those existing herein we would expect that any decline in the value of realty would be reflected in the award for business damage rather than in a separate award, we do not consider the separate awards made to the Sutliffs here as constituting a double award of damages as was the case in *Bensel* (*supra*).

We do not here reach the questions of whether the Tweedies' claim was broad enough to encompass damage to the real estate involved or if the award therefor was proper as to amount since we agree with appellant's contention that the Tweedies have, in fact, on the present record suffered no loss. Undisputedly the Tweedies did not become the actual owners of the property until 1951 at which time they paid $15,000 therefor. Since their expert valued the property in 1959 at $19,000, using the Tweedies' own figures the proof indicates an increase rather than a decrease in value after they acquired ownership. The Tweedies urge, however, that since they held the property as lessees with an option to purchase from 1945 to 1951 they should be compensated for any decrease in value during that period. A mere holder of an option has no interest in the land which is subject to the option until the exercise thereof (*Matter of*

*Levy,* 169 Misc. 785). We can find no authority which would require a different result where the claimant is both a lessee and an optionee. (See *Matter of City of New York [Upper N. Y. Bay]*, 246 N. Y. 1, 33; *Matter of Port of N. Y. Auth.*, 12 A D 2d 18; 2 Nichols, Eminent Domain, § 5.21, subd. [1].) Additionally, even if it could be established that, despite the purchase price, the value of the property in 1951 was greater than the 1959 appraisal, the Tweedies, having acquired the property with knowledge of the proposed city development, would not be entitled to an award for any decrease in value during this period (*Matter of Huie [White]*, 13 A D 2d 596; *Matter of Huie [Arenson]*, 18 A D 2d 270).

Appellant also urges that the awards are excessive. In reviewing this facet of the Commissioners' determination we are guided by the following language of the Court of Appeals from *Matter of Huie (Fletcher)* (2 N Y 2d 168, 171): "The courts will reject a determination of the commissioners only for irregularity in the proceedings, or if based on an erroneous principle of law (see *Matter of City of New York [Northern Blvd.]*, 258 N. Y. 136, 155), or, if it ' shocks not only one's sense of justice, but one's conscience ' (*Matter of City of New York [Old Third Ave.]*, 241 App. Div. 12, 16, appeal dismissed 265 N. Y. 503; see *Adirondack Power & Light Corp.* v. *Evans, supra* [226 App. Div. 490]; *Matter of Huie [Merrill—City of New York]*, *supra* [306 N. Y. 951]; *Matter of Cibulas* v. *Village of Menands,* 266 App. Div. 895)." On reviewing the testimony in the present record we cannot say that the awards rendered so shock the conscience of the court that they must be rejected.

That portion of the order confirming the award to Lynn and Louise Sutliff should be affirmed, with costs; that portion of the order confirming the award to Stilson A. and Dorothy Tweedie should be reversed on the law and the facts and the proceeding remitted to the Commissioners, their successors, or to new Commissioners as the court at Special Term may be advised, unless they stipulate to reduce the award to $5,500, plus witness fees of $416.63 in which event the order as to such claimants-respondents as thus modified should be affirmed, with costs.

BERGAN, P. J., COON, GIBSON and TAYLOR, JJ., concur.

That portion of the order confirming the award to Lynn and Louise Sutliff affirmed, with costs; that portion of the order confirming the award to Stilson A. and Dorothy Tweedie reversed on the law and the facts and the proceeding remitted to the Commissioners, their successors, or to new Commissioners

as the court at Special Term may be advised, unless they stipulate to reduce the award to $5,500, plus witness fees of $416.63 in which event the order as to such claimants-respondents as thus modified is affirmed, with costs.